**Douglas GOMES et al.**

v.

**John J. MORAN et al.**

**Romeo GABRIELLE**

v.

**Griffin BELL et al.**

Civ. A. Nos. 4794, 78–610.

United States District Court, D. Rhode Island.

March 2, 1979.

William J. Rutzick of R. I. Legal Services, John A. MacFadyen, III, Barbara Hurst, John F. Cicilline, Providence, R. I., for plaintiffs.

Maureen E. McKenna, Providence, R. I., Paul Foster, Dept. of Corrections, Cranston, R. I., for State defendants.

Robert Gammell, Asst. U. S. Atty., Providence, R. I., for Federal defendants.

## MEMORANDUM AND ORDER

PETTINE, Chief Judge.

The state and federal defendants in these cases have filed motions to dismiss based on the recent decision in *Sisbarro v. Warden, Massachusetts State Penitentiary,* 592 F.2d 1 (1st Cir. 1979), rendered seventeen days subsequent to this Court's ruling on the state defendants' motion to dismiss. The Court's denial of the motion to dismiss by the state defendants was rendered in its Memorandum and Order dated January 22, 1979, wherein it consolidated these cases for trial. At that time *Sisbarro* was pending on appeal.

These cases challenge the legality of the transfer of fifteen inmates from Rhode Island's Adult Correctional Institution to federal prisons throughout the country. The plaintiff inmates claim that they possess a liberty interest in freedom from interstate transfer and that their transfers, therefore, must be accompanied by certain due process protections under the Fourteenth Amendment. In its Opinion of January 22, this Court held that plaintiffs do possess a liberty interest, within the meaning of the due process clause. On the basis of this holding the Court concluded that the inmates correctly claimed the right to due process protections in connection with their transfers and indicated that it would hold a hearing to determine whether proper procedures were afforded. *Gomes v. Moran,* see Appendix, p. 544 at p. 549.

The Court also held that plaintiff Romeo Gabriele did state a cause of action by alleging that his transfer was accomplished in retaliation for his exercise of First Amendment rights. *Id.,* at 550 551. Ruling only on the state defendants' motion to dismiss, the Court did not address plaintiffs' third claim, that the federal statute which authorizes the Bureau of Prisons to accept state transferees, 18 U.S.C. § 5003, gives rise to a due process interest which may be asserted by those transferees.

In *Sisbarro, supra,* the First Circuit Court of Appeals explicitly refused to follow the holding of *Lono v. Fenton,* 581 F.2d 645 (7th Cir. 1978) (en banc), that the federal transfer statute creates a due process interest in transferees. Plaintiffs rely on this holding in their claim against the federal defendants. Therefore, this element of plaintiffs' complaint in *Gabriele v. Bell* must be rejected here, and the federal defendants' motion to dismiss will be granted.

The state defendants argue that this Court should dismiss these cases against them in light of the First Circuit's analysis of the federal transfer statute. The state claims that the First Circuit's analysis would be the same when applied to the Rhode Island transfer statute, R.I.G.L. § 13–12–1 *et seq.,* with the result that no due process interest would be found under state law.

The state and federal transfer statutes are very similar; arguably, one may be viewed as the converse of the other. Both provide that transfers may be accomplished when "proper and adequate treatment, facilities, and personnel are unavailable"

within the state, for the purposes of "custody, care, subsistence, education, treatment, and training" of state prisoners. In *Sisbarro, supra,* the First Circuit held that

. . . as the *Lono v. Fenton* dissent notes, neither the language of the [federal transfer] statute nor its administrative interpretation by the Bureau of Prisons suggests "a substantive limitation or restriction on the purposes for which prisoners may be transferred." *Id.* at 649. To the contrary, the provision allows a prisoner to be contracted for "custody, care, subsistence, education, treatment, and training"—a list that runs the gamut of penological purposes.

*Sisbarro v. Warden, supra,* at 4 (citations omitted).

For these reasons the appellate court found that no due process interest is created by the federal transfer statute.

The First Circuit's interpretation of 18 U.S.C. § 5003 is unambiguous. Because of the great similarity of language between that statute and Rhode Island's interstate transfer statute, R.I.G.L. § 13–12–1, the First Circuit's reasoning is controlling upon this Court to the extent that no due process interest may be derived exclusively from the Rhode Island transfer statute.

In its Opinion of January 22, this Court looked beyond the precise wording of the Rhode Island interstate transfer statute when it found that a liberty interest exists in favor of plaintiff inmates. By referring to "the framework of state law," including statutory declarations of legislative purpose and the responsibilities of the Director of the Department of Corrections, this Court reached a result different from that reached by the District Court of Massachusetts in *Sisbarro v. Warden,* C.A. No. 77–26–S, slip op. (June 21, 1978). However, in light of the First Circuit's strict interpretation of the federal transfer statute, this Court will not persevere in its application of a broader scope of analysis under the due process clause. Although the First Circuit itself has recognized that state statutory schemes might be interpreted to create "enforceable substantive rights," *Lombardo v.*

*Meachum,* 548 F.2d 13, 15 (1977), its opinion in *Sisbarro* comes too close to the present case for this Court to adhere to its earlier holding.

Because the Court today reverses its earlier holding and may be applying *Sisbarro* too broadly, the Memorandum and Order of January 22, 1979 is hereby incorporated by reference in today's order. The Court now directs that its order of January 22, 1979 denying the state defendants' motion to dismiss shall be vacated. In light of the First Circuit Court of Appeals' holding in *Sisbarro,* the federal defendants' motion to dismiss is hereby granted. The state defendants' motion to dismiss is granted with respect to the *Gomes* motion for further relief and counts two and three of the complaint in *Gabriele v. Bell.*

■ Plaintiff Romeo Gabriele's First Amendment claim is unaffected by the holding in *Sisbarro.* The Court will schedule a hearing on this matter and will entertain plaintiffs' motion to amend the complaint in *Gabriele* to include other transferees under this cause of action.

### APPENDIX

Douglas GOMES et al.

v.

John J. MORAN et al.

Romeo GABRIELLE

v.

Griffin BELL et al.

Civ. A. Nos. 4794, 78–610.

United States District Court, D. Rhode Island.

Jan. 22, 1979.

### MEMORANDUM AND ORDER

PETTINE, Chief Judge.

These related actions challenge the involuntary transfer of fifteen inmates from Rhode Island's Adult Correctional Institution (ACI) on September 20, 1978. In *Gomes,* the transferred inmates move, pur-

suant to Fed.R.Civ.P. 70, for further relief in light of this Court's Opinion in *Gomes v. Travisono,* 353 F.Supp. 457, *modified,* 490 F.2d 1209 (1st Cir.), *vacated and remanded,* 418 U.S. 909, 94 S.Ct. 3200, 41 L.Ed.2d 1155 (1973), *on remand,* 510 F.2d 537 (1974), and its Judgment of February 2, 1975. In that Judgment, entered by consent of the parties, this Court permanently enjoined prison officials from transferring inmates to prisons outside of Rhode Island without first affording them specified elements of procedural due process, including abbreviated procedures to be followed in the event of an emergency. In the present motion plaintiffs argue that no emergency existed at the ACI on or about September 20, and in the alternative that any emergency which did exist at that time did not justify the transfer of these inmates. In either case, plaintiffs assert that defendants have violated paragraph 2(A) of the *Gomes* injunction because they did not follow the full panoply of procedures set forth therein. They also argue that, even if an emergency warranting these transfers did exist, the abbreviated procedures required by paragraph 2(B) of the *Gomes* injunction were not followed.

Based on these arguments, the present motion seeks this Court's order that no inmates may be transferred in the future without compliance with the *Gomes* injunction, and that the fifteen inmates already transferred must be returned to Rhode Island. In the alternative plaintiffs seek the Court's imposition of civil contempt sanctions, of which defendants may purge themselves by returning the fifteen inmates to the ACI.

In *Gabrielle,* plaintiffs present additional claims of illegality regarding the transfers of September 20. Specifically, plaintiffs allege that Romeo Gabrielle was transferred in retaliation for his exercise of First Amendment rights by speaking out against conditions at the ACI, and that the transfers as to all the transferred inmates were in violation of rights accruing to all inmates under R.I.G.L. § 13–12–1 (1976 Supp.) and 18 U.S.C. § 5003 (1976). According to their theory, these statutes require pre-transfer determinations by state and federal officials, respectively, that adequate treatment facilities are not available in Rhode Island but are available in the federal system.

In *Gabrielle* plaintiffs seek the immediate return of all transferees, a declaratory judgment that the rights of these inmates under the cited statutes have been violated, and a declaratory judgment that Romeo Gabrielle's First Amendment rights have been violated.

The federal defendants in *Gabrielle* have filed their opposition to plaintiffs' request for injunctive relief. The state defendants have opposed the relief requested in both *Gomes* and *Gabrielle,* and additionally have moved to dismiss the complaint in *Gabrielle.*

Plaintiffs have vigorously asserted the applicability of the *Gomes* injunction to the transfers of September 20. They argue that no justification existed here for the alleged transfer of these inmates without prior notice and hearings, relying on the emergency transfer provisions of the *Gomes* Judgment (paragraph 2(B)). It is apparently their view that the *Gomes* injunction, because it purports to apply to "regular" and emergency transfers of inmates, compels the Department of Corrections to afford prior procedural protection to transferees in any and all circumstances.

This Court never intended to place that kind of straightjacket on prison officials in exercise of their legitimate authority. Nor does the Constitution or relevant decisional law require that it do so. When prison inmates assert interests which fall within the scope of protection of the Due Process Clause, it is incumbent upon a reviewing court to balance those interests against the needs of prison officials in their efforts to maintain the safety and security of a correctional institution. *Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1973). Where security considerations and the potential for violence weigh heavily in favor of affording prison officials maximum freedom of choice in their decision making, courts may be forced to strike "the balance that the Due Process Clause de-

mands", *Wolff, supra,* at 561, 94 S.Ct. at 2977, with the result that only post-transfer procedural safeguards are required. No constitutional rule dictates that the delay of due process procedures is impermissible in the context of a prison emergency.

During the past twelve years, this Court has been called upon repeatedly to review the actions of ACI officials in situations of purported emergency. *See, e. g., Gomes v. Travisono,* 353 F.Supp. 457 (1973); *Morris v. Travisono,* 373 F.Supp. 177 (1974); *Jefferson v. Southworth,* 447 F.Supp. 179 (1978). Throughout its decisions in those cases the Court has recognized the underlying axiom that "strong emergency conditions [may] mitigate against notice and hearing before transfer", *Gomes v. Travisono,* 353 F.Supp. 457, 469 (1973), or before disciplinary action is taken, *Morris v. Travisono,* 373 F.Supp. 177, 181 (1974). Where the right to procedural due process exists but must be postponed due to emergency, the Court has required that full hearings be held after the fact. *Gomes, supra,* at 469; *Morris, supra,* at 181.

Therefore, plaintiffs cannot rely on a literal application of the *Gomes* injunction to the facts of the instant case. It may be established that the circumstances surrounding the transfers of September 20 were sufficiently benign to have made it feasible for defendants to comply fully with the provisions of that injunction, in its emergency or normal requirements. However, mere proof that the terms of the injunction were violated in this case will not suffice to establish liability on the part of defendants. Where the degree of required due process protections can be determined only by a balancing of the rights of inmates against the needs of prison officials, this Court will not abdicate its duty to strike that balance by adherence to the terms of an injunction issued three years ago, in a different climate and based on different facts.

The defendants would have this Court deny review of their action altogether on a ground independent of the *Gomes* injunction. It is argued that this Court is without subject matter jurisdiction to review the legality of these transfers because plaintiffs cannot demonstrate the denial of a constitutionally protected right. Defendants base their argument on the United States Supreme Court's recent decision in *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976).

In *Meachum,* the Supreme Court stated that plaintiff inmates must first be deprived of a right grounded in state law before the due process protections of the Fourteenth Amendment are triggered. The Court rejected "the notion that any grievous loss visited upon a person by the state is sufficient to invoke the procedural protections of the Due Process Clause." 427 U.S. at 224, 96 S.Ct. at 2538. The Court reviewed its prior application of due process protections to the deprivation of inmates' good time credits in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) and concluded that

[t]he liberty interest protected in *Wolff* had its roots in state law, and the minimum procedures appropriate under the circumstances were held required by the Due Process Clause "to insure that the state created right is not arbitrarily abrogated." *Id.,* at 557, [94 S.Ct. 2963, 2975]. This is consistent with our approach in other due process cases such as *Goss v. Lopez,* 419 U.S. 565, [95 S.Ct. 729, 42 L.Ed.2d 725] (1975); *Board of Regents v. Roth,* [408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)]; *Perry v. Sindermann,* 408 U.S. 593, [92 S.Ct. 2694, 33 L.Ed.2d 570] (1972); *Goldberg v. Kelley,* 397 U.S. 254, [90 S.Ct. 1011, 25 L.Ed.2d 287] (1970). *Id.,* 427 U.S. at 226, 96 S.Ct. at 2539.

Defendants argue that this Court should apply that approach to deny the relief requested in *Gomes* and dismiss the complaint in *Gabrielle.* They argue that plaintiffs can assert no liberty interest which would warrant the application of due process protections, and that, therefore, the Court is without jurisdiction to review the legality of the transfers, the existence of the *Gomes* injunction and regulations notwithstanding.

Defendants correctly state that the theory of *Meachum* is controlling in this case. Recent Supreme Court cases leave little doubt that, unless a federal Constitutional guarantee is implicated, state law is to be a primary component of the Fourteenth Amendment's phrase "liberty or property." As *Meachum* stated, the interest should "have 'its roots in state law.'" 427 U.S. at 230, 96 S.Ct. at 2541. *See also Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). However, a court is not compelled to confine itself solely to the exact and technical wording of state statutes in order to determine if due process procedures should be afforded. Instead, state law is the starting point in the search for a protected due process interest, but it is not necessarily the ending point. If the framework of state law appears to characterize something as liberty or property, a court is free to then examine that asserted interest and determine if such an interest is widely accepted as important and deserving of due process protections.[1] For example, state laws often set forth certain responsibilities for public officials and people benefiting from those responsibilities may assert that an expectancy or reliance has been created. If the responsibilities detailed in the state statutory framework indicate an expectancy or interest that is widely accepted in practice and is in accordance with the fundamental understandings of society, then that interest, first nurtured in state law, should be recognized as inherent in the Fourteenth Amendment's phrase of "liberty or property."[2] State law need not explicitly grant due process protections or specify specific rights; it is sufficient, under both traditional and recent Supreme Court doctrine, that the state provide a firm indication of an expectancy from which a court can reasonably derive a liberty or property interest in light of widely accepted, fundamental understandings.

This Court must begin the search for a liberty interest by inspecting the Rhode Island statutes that deal with the rehabilitation, treatment and transfer of state prisoners.[3] Rhode Island law provides that "persons convicted by the courts of this state shall be sentenced to and imprisoned in the adult correctional institutions." R.I.G.L.

1. *See, e. g., Negron v. Ward,* 458 F.Supp. 748 (S.D.N.Y.1978) (federal court, following the *Meachum* rationale, finds liberty interest by inspecting state law, widely accepted practice within the state, and "explicit understandings.") *See also* Monaghan, Of "Liberty" and "Property," 62 Cornell L.Rev. 405, 433, 440–41.

2. *But see Epps v. Levine,* 457 F.Supp. 561 (D.Md.1978). This Court cannot agree with the approach taken in *Epps.* That case involved an intrastate transfer of pre-trial detainees. State law allowed transfer only under certain specified circumstances. Yet, the district court refused to find a liberty interest because state law did not explicitly state that the detainees must be afforded pre-transfer hearings. The court refused to find that the restrictions on official discretion created a reasonable expectation or legal interest:

   "Rather than trying to create legal rights in pretrial detainees, the Maryland legislature in § 690 defined the responsibilities of the Division of Correction . . . ."
   *Id.* at 566. This analysis appears seriously flawed. *Meachum* never required state law to explicitly require due process procedures; the due process clause is in the federal Constitution to assure that such procedures will be afforded if a liberty or property interest is implicated. Further, the court's distinction between an official's responsibilities and the recipient's rights is puzzling. Under Hohfeldian analysis, responsibilities are necessary corollaries of rights; therefore, responsibilities on the part of an official can often implicitly, if not explicitly, create rights on the part of others. That is, a responsibility or a restriction upon an official's discretion increases the freedom and privilege of a person who can no longer be interfered with by the official; thus, a right is created.

3. Plaintiffs have argued that the regulations adopted by the Department of Corrections regarding procedures to be followed in transfer cases are themselves sufficient to create a due process liberty interest. Those regulations were adopted pursuant to the consent judgment in *Gomes* and track its provisions. Because the Court finds a liberty interest arising from state statutes, it does not now reach this question. *But see Lombardo v. Meachum,* 548 F.2d 13 (1st Cir. 1977), wherein the court rejected plaintiffs' claim that state procedural regulations affording inmates hearings before reclassification created a liberty interest under the Due Process Clause.

§ 12–19–23 (1969). The warden of the Adult Correctional Institutions is "to receive such persons into his custody and safely keep them in said institutions during the term specified in such sentence." R.I.G.L. § 12–19–25 (1969).

Title 42, Chapter 56 of Rhode Island's General Laws establishes a broad rehabilitative goal for the Department of Corrections:

> [t]he purpose of this chapter is to establish a department of state government to provide for the custody, care, discipline, training, treatment, and study of persons committed to state correctional institutions or on probation or parole, so that such persons may be prepared for release, aftercare, and supervision in the community.

R.I.G.L. § 42–56–1(b) (1977).

The Rhode Island interstate transfer statute must be read in the context of this goal of corrections, "release, aftercare, and supervision *in the community*." (emphasis supplied). The interstate transfer statute contemplates transfers in very limited circumstances:

> The attorney general, when the director of corrections shall certify that proper and adequate treatment, facilities and personnel are unavailable within this state, shall hereby be authorized to contract with the proper officials (director of bureau of prisons) of the United States for the custody, care, subsistence, education, treatment, and training of persons convicted of criminal offenses in the courts of this state.

R.I.G.L. § 13–12–1 (1976 Supp.).

In the context of the statutory scheme described above, this transfer statute allows the Director to transfer inmates only when he is unable to carry out the duties of custody and care imposed by that scheme. In this sense the transfer statute grants authority which complements the Director's authority to act in furtherance of the goals established by the legislature; it enables him to transfer inmates to the federal prison system only when "proper and adequate treatment, facilities and personnel" are not available in Rhode Island. In other words, the legislature only allows transfers if rehabilitation cannot be accomplished within the state; normally, the inmate is to remain under the control of state authorities to insure that his correction and treatment are sufficient to insure his safe release "in the [Rhode Island] community."

The Court need not now detail the limited circumstances which would make "proper and adequate treatment, facilities and personnel unavailable within this state" except to note that security constitutes such a proper circumstance. In *Gomes* this Court noted that

> [w]hat is proper, adequate, or appropriate treatment of an inmate and what is adequate care are not *entirely* unrelated to the security requirements of the A.C.I.
>
> . . . . .

*Gomes, supra,* at 471.

Similarly, the unavailability of such treatment, facilities, and personnel is not unrelated to security considerations. Other courts have agreed. *See, e. g., Rebideau v. Stoneman,* 575 F.2d 31 (2d Cir. 1978). That is, where an inmate must be removed from the ACI for compelling security reasons, and where the Department is unable to provide proper and adequate care at an isolated site, "unavailability" may exist within the meaning of the statute and warrant transfer of the inmate to a federal facility.

Even if security transfers are included in the statute, a statute that allows transfers only for reasons of "unavailability" severely restricts the circumstances in which a prisoner can be transferred; these substantive restrictions create a limited liberty interest on behalf of a prisoner. Such a statute necessarily restricts a prison official's discretion and therefore creates a justifiable reliance that a prisoner will remain incarcerated within Rhode Island unless exceptional circumstances exist.

The amount of discretion granted officials in a prison transfer statute generally determines whether the statute creates a liberty interest. As the First Circuit has

noted, a state law or regulation must contain "standards governing the Commissioner's exercise of his discretion" if it is to "create the kind of substantive interest that is required before a state created 'liberty' interest can be said to exist." *Lombardo v. Meachum*, 548 F.2d 13, 15 (1st Cir. 1977). For example, the Massachusetts interstate transfer statute of state prisoners to federal institutions contains no "substantive standards" to limit an official's discretion in transferring a prisoner.[4] The lack of any substantive guidelines to limit the official's discretion in transferring a prisoner prevented the creation of any reasonable expectancy or due process interest. *Sisbarro v. Warden*, C.A.No.77–26–S (D.Mass. June 21, 1978). Similarly, a federal prisoner has no liberty interest when he can be transferred interstate solely upon the judgment of the United States Attorney General. *Curry-Bey v. Jackson*, 422 F.Supp. 926 (D.D.C. 1976). *See also Smith v. Carlson*, 447 F.Supp. 422, 425–26 (M.D.Pa.1978) (no interest created when Attorney General can transfer prisoner "for any number of reasons"); *United States v. Roth*, 448 F.Supp. 1359 (E.D.Pa.1978) (same).

In comparison to the above statutory schemes, the Rhode Island statute does contain substantive standards that significantly circumscribe an official's discretion. Under the Rhode Island statute a prisoner can only be transferred when "proper and adequate treatment, facilities and personnel are unavailable within this state . . .". Rhode Island law does not create a situation where the prisoner can be transferred "at the whim of the Commissioner," *see Four Certain Unnamed Inmates of Massachusetts Correctional Institution at Walpole, Massachusetts v. Hall*, 550 F.2d 1291, 1292 (1st Cir. 1977), or "for any number of reasons." *See Smith v. Carlson, supra; Sisbarro v. Warden, supra.* Rhode Island has understandably placed substantive limitations upon the interstate transfer of prison-

ers. Apparently, the Rhode Island legislature desired to retain control and direction over the care, discipline and treatment of the state's prisoners and, thereby, assure the prisoners' correct rehabilitation before releasing them into the Rhode Island community. Once a prisoner is moved outside the state, Rhode Island obviously loses control over the prisoner and can no longer formulate the correction program it thinks will be most effective. Thus, interstate transfer is not a situation where the prisoner is being transferred to another institution under the control of the same government, *see Meachum v. Fano, supra; Curry-Bey v. Jackson, supra*; nor is it a situation of simply transferring a prisoner to a different ward in the same general location, *see Four Certain Unnamed Inmates of Massachusetts Correctional Institution at Walpole, Massachusetts v. Hall, supra.* A court may be justified in finding more official discretion to transfer in the situation where the same governmental body is to retain control over the care and treatment of the transferred prisoner. In the present situation, however, finding a large degree of discretion within prison officials would circumvent the policies behind Rhode Island law. The legislature has carefully set its correctional goals which are to be applied to every prisoner sentenced by the Rhode Island courts. A prison official cannot circumvent this state policy by transferring a prisoner out of state except in a limited number of circumstances.

This Court finds that the limits placed upon a prison official's discretion do create a due process liberty interest on the part of a prisoner. It is true that Rhode Island law does not explicitly state that a "prisoner may be transferred out of state only if it is found as a fact after notice and hearing that adequate facilities, treatment or personnel are unavailable in Rhode Island." As previously discussed, however, *Meachum* and other due process cases do not require

---

4. M.G.L. ch. 127 § 97A provides that, if federal authorities approve, "the commissioner may . . . transfer any prisoner sentenced to state prison to any available or appropriate correctional institution maintained and super- vised by the federal government . . . ." Under this statute, a prison official need only get federal approval and then may transfer any prisoner at his complete discretion. No substantive standards guide or limit his decision.

such an explicit statement of a due process right.[5]

Rhode Island law enumerates restrictions and responsibilities that limit an official's discretion to transfer a prisoner out of state. Thus, Rhode Island inmates have "some right or justifiable expectation rooted in state law that [they] will not be transferred except for misbehavior or upon the occurrence of other specified events." *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976). The substantive standards and limitations on discretion demand some due process determination, at some point in time, to determine if the necessary "unavailability" exists.

Having decided that a liberty interest is implicated, the Court must decide "what process is due." *Goss v. Lopez*, 419 U.S. 565, 577–78, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). This Court is well aware that the due process clause was never intended to inhibit a prison official's justifiable actions in the midst of an emergency. *Jefferson v. Southworth*, 447 F.Supp. 179, 189 (D.R.I. 1978). Pre-transfer hearings could place an impossible burden on prison administrators who must act quickly when faced with a potential prison crisis. If the prison officials reasonably believed that an emergency existed, due process only requires a post-transfer hearing. *See Gomes v. Travisono*, 490 F.2d 1209, 1215 (1st Cir. 1973). *Cf. Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1970); *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). After a hearing on the merits, this Court will determine the type and extent of procedures that should be afforded at such a post-transfer hearing.

A federal court's review of such a hearing is limited. This Court need only find that the officials reasonably believed in good faith that an emergency existed which allowed the transfer. *See Nadeau v. Helgemoe*, 561 F.2d 411, 419 (1st Cir. 1977); *Jefferson v. Southworth, supra*. Review of the post-transfer hearings themselves is limited

to assuring that the necessary procedures have been followed and that the administrative determination is supported by substantial evidence.

Therefore, Gomes' current complaint now only requires this Court, at the trial on the merits, to decide two questions. First, were the officials reasonable in believing an emergency existed at the ACI? Second, was the transfer motivated by and related to this reasonable belief?

Since this Court will be deciding whether or not the transfers were rightfully made in the first instance, it necessarily resolves the due process issue, *i. e.* if the officials were not reasonable in believing an emergency existed at the ACI then, of course, it ends the case and the inmates must be returned; on the other hand, if the officials acted reasonably, then the hearing before this Court satisfies in full the need for a post-transfer hearing since each case will be decided individually.

With regard to the First Amendment claim presented in *Gabrielle*, defendants cannot rely on the *Meachum* rationale to argue that the claim should be dismissed. The presence or absence of a state-created right has no relevance where plaintiffs seek the protection of constitutional guarantees which are independent of the due process clause. For example, where it has been held that no due process protections attach to interstate transfers because of the absence of state-created interests, it has been held nonetheless that "the discretion afforded prison administrators in transfer decisions does not swallow the inmate's fundamental right of access to the courts." *Laaman v. Perrin*, 435 F.Supp. 319, 327 (D.N.H. 1977). In like manner, *Meachum's* theory of due process has no application where plaintiff claims that his transfer was accomplished as a penalty for engaging in constitutionally-protected speech. *See Cruz v. Beto*, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Fajeriak v. McGinnis*, 493 F.2d 468 (9th Cir. 1974).

---

5. *But see Epps v. Levine, supra*, criticized in n.2 of this opinion.

However, the recognition that inmates possess First Amendment rights, like the recognition that they possess a liberty interest in remaining in a Rhode Island prison, does not imply that any transfer which affects those rights is, *per se*, illegal. Inmates do not possess First Amendment rights equivalent in scope to those of unincarcerated members of society. To cite one example among many, prison officials can legitimately restrict speech that might potentially lead to danger, even though this showing of only possible danger might be "unimpressive if . . . submitted as justification for governmental restriction of personal communication among members of the general public." *Pell v. Procunier*, 417 U.S. 817, 825, 94 S.Ct. 2800, 2805, 41 L.Ed.2d 495 (1973). *See also Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 133, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977). Thus, on the facts of this case it may become evident that plaintiffs' speech could have been restricted legitimately by prison officials. Alternatively, an otherwise valid transfer decision would not be unconstitutional because its side effect was the silencing of plaintiffs' speech within the ACI. Again, the Court must proceed to the merits of plaintiffs' case.

A summary of this Court's legal conclusions may be appropriate.

1. Rhode Island law creates a reasonable expectancy that a prisoner sentenced by a state court will be transferred out of state only when "unavailability" exists under R.I.G.L. § 13–12–1.

2. Security reasons may constitute the requisite "unavailability" under the statute.

3. The substantive limitations contained in Rhode Island law give rise to a liberty interest deserving of due process protection.

4. If prison officials reasonably believe an emergency exists justifying these transfers, post-transfer hearings satisfy due process.

5. Gabrielle's first amendment claim states a cause of action independent of any asserted state-created right.

The state defendant's motion to dismiss in *Gabrielle* is hereby denied. The case is consolidated with *Gomes v. Moran* for a hearing on the merits.