**UNITED STATES of America ex rel. Larry HOOVER, Randy Dillard, Harlan deSavieu, Herbert Stephens, Willie Clark, Leroy Hairston, Larry Gambrell, Samuel Smith, Luther Coburn, Michael Anderson, Petitioners,**

v.

**Robert ELSEA, Warden, Metropolitan Correctional Center, Chicago, Illinois; Gayle Franzen, Director, Illinois Department of Corrections, Louis Brewer, Warden, Stateville Prison, Respondents.**

No. 79 C 790.

United States District Court,
N. D. Illinois, E. D.

Sept. 23, 1980.

Jonathan C. Moore, Jeffrey Haas, G. Flint Taylor, Jr., Chicago, Ill., Kirk R. Shearburn, Maywood, Ill., Emory Andrew Tate, Tate & Associates, Chicago, Ill., for petitioners.

Thomas P. Sullivan, U. S. Atty., Edward J. Moran, Asst. U. S. Atty., Patricia Bornor, Ill. Dept. of Corrections, Chicago, Ill., for respondents.

## MEMORANDUM OPINION AND ORDER

CROWLEY, District Judge.

Ten Stateville prisoners brought this action, under 28 U.S.C. § 2254, seeking a writ of habeas corpus. Petitioners allege that they were transferred from Stateville to the Metropolitan Correctional Center in February, 1979, in preparation for transfer to federal penitentiaries throughout the United States. Contending that the transfers are illegal, petitioners request that they be released from federal custody and

returned to state custody. Alternatively, petitioners seek a hearing to determine whether they are in need of specialized treatment justifying the transfers.

In their Supplemental Petition, petitioners raise federal claims and pendent state claims. First, they contend that their transfers to federal custody violate 18 U.S.C. § 4001(a),[1] 18 U.S.C. § 5003[2] and the Fifth and Fourteenth Amendments. Petitioners maintain that under *Lono v. Fenton*, 581 F.2d 645 (7th Cir. 1978), state prisoners are subject to federal confinement only upon a showing that they are in need of specialized treatment unavailable in the state prison system. Petitioners allege that they expect to be transferred to federal prisons outside Illinois and claim that even if they need specialized treatment which would justify the transfers, they have been denied due process because they were not given notice and an opportunity to be heard prior to their transfers. Further, petitioners contend that any transfer to federal prisons outside the state is a direct violation of Article I, Section 11 of the Illinois Constitution, which prohibits transporting a person out of the state for an offense committed within the state. Because of this flat prohibition, petitioners claim that the transfers violate their constitutional rights.

Respondents disagree with the *Fenton* holding that a showing of specialized need is required under § 5003. Relying on the dissent in *Lono v. Fenton*, 581 F.2d 645 (7th Cir. 1978), they insist that the only conditions which must be met before state prisoners are transferred is that proper facilities are available and that the federal government is reimbursed for the prisoners' care. Nevertheless, despite their contention that a showing of specialized need is not mandated by § 5003, they maintain that the submission of standardized form affidavits by state and federal prison officials[3] describing why the state system is inadequate and how the federal system is equipped to provide the specialized treatment satisfies the *Fenton* requirement. Respondents aver that neither § 5003 nor *Fenton* require a hearing in connection with the transfers and assert that even if petitioners are entitled to due process hearings, the hearings need not be held before the transfers. They contend that in emergency situations the hearings may be held after the transfers and allege that emergency conditions existed at Stateville at the time of petitioners' transfers. Lastly, respondents Franzen and Brewer contend that this Court does not have jurisdiction to consider the issue of whether the transfers violate the Illinois Constitution.[4]

The threshold question is whether the Court may consider the state claim, for where a court has jurisdiction over federal statutory claims, federal constitutional claims and a state claim, the pendent state claim should be considered first, if its resolution obviates the need to consider the federal claims. *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *Vickers v. Quern*, 578 F.2d 685 (7th Cir. 1978). The district court may, in its discretion, exercise pendent jurisdiction over state claims when it has subject matter jurisdiction over the federal claims. The

---

1. 18 U.S.C. § 4001(a) provides:
   *(a) No citizen shall be imprisoned or otherwise detained by the United States except pursuant to an Act of Congress.*

2. 18 U.S.C. § 5003 in pertinent part provides:
   *(a) The Attorney General, when the Director shall certify that proper and adequate treatment facilities and personnel are available, is hereby authorized to contract with the proper officials of a State or Territory for the custody, care, subsistence, education, treatment, and training of persons convicted of criminal offenses in the courts of such State or Territory. Provided, that any such contract shall provide for reimbursing the United*

*States in full for all costs or other expenses involved.*

3. Each of two prison officials submitted a standardized form affidavit for each petitioner. The state affidavits detail why the state system cannot adequately care for petitioners and the federal affidavits state how the federal system is equipped to provide the allegedly required specialized treatment.

4. Federal respondent Elsea contends that Claim III fails to state a claim against him because this claim is concerned solely with state law.

power to assume pendent jurisdiction should not be exercised in every case; it is proper, however, where the federal claim is of sufficient substance to confer subject matter jurisdiction and both the federal and state claims "derive from a common nucleus of operative facts which plaintiffs would reasonably expect to try in one proceeding." *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

■ Determination of whether or not to exercise pendent jurisdiction requires a balancing of the considerations of comity, fairness to the litigants and judicial economy with the state's interest in administering its own affairs.

■ Abstention is proper where issues of state law underlying the federal constitutional claims brought in federal court are unclear or an erroneous decision of state law by the federal court would be disruptive of important state policies. *D'Iorio v. Delaware County*, 592 F.2d 681 (3d Cir. 1978). In these situations deference should be given to the state court, having more familiarity with the controlling principles, to render a reliable and final judgment. *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

■ On the other hand, abstention is a narrow exception to the duty of the district court to fully adjudicate the controversy before it and should only be invoked in exceptional circumstances. *Ktsanes v. Underwood*, 467 F.Supp. 1002 (N.D.Ill.1979). The doctrine should not be invoked where its application would result in significant delay, *Atchison, Topeka and the Santa Fe Ry. v. Illinois Commerce Commission*, 453 F.Supp.920 (N.D.Ill.1978) or piecemeal litigation of federal and state issues, *Commissioners of Highways of Town of Annawan v. United States*, 466 F.Supp. 745 (N.D.Ill. 1979). Additionally, deference to the state court is unnecessary where the state issues are not complex or subject to alternative construction. 466 F.Supp. at 759.

■ In this case the factors strongly militate in favor of the exercise of pendent jurisdiction. State prisoners are entitled to federal habeas corpus relief when their detention violates the fundamental liberties safeguarded against state action by the Federal Constitution. *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). The due process clause is applicable to rights conferred upon the prisoner by statute. *United States ex rel. Gereau v. Henderson*, 526 F.2d 889 (5th Cir. 1976). Since the federal transfer statute creates a due process interest in the transferees, *Gomes v. Moran*, 468 F.Supp. 542 (D.R.I. 1979), a substantial constitutional question has been presented which confers this Court with subject matter jurisdiction, 28 U.S.C. § 2254. Additionally, while the provision of the Illinois Constitution has not been interpreted by the Illinois courts, the language is not complex and the possibility of an incorrect interpretation will not jeopardize any state policy. More importantly, the petitioners are already in federal custody and their due process and equal protection claims are before the Court. The issue of whether the transfers violate the Illinois Constitution is intricately related to these constitutional issues. There is every reason to exercise pendent jurisdiction in order to resolve the entire controversy completely and expeditiously.

Petitioners claim that the Illinois Interstate Correction Compact, 1979 Ill.Rev.Stat. ch. 38, § 1003–4–4 *et seq.* violates Article I, Section 11 of the Illinois Constitution. The Compact authorizes prisoner transfers to another state whenever it is "necessary or desirable in order to provide adequate quarters and care or an appropriate program of rehabilitation or treatment." In contrast, Article I, Section 11 of the Illinois Constitution provides that "[n]o person shall be transported out of the State for an offense committed within the State."

■ The Illinois Constitution is the supreme law of the state and constitutional restrictions upon legislation must be obeyed. *Board of Trustees of Junior College District No. 521 v. Webb*, 24 Ill.App.3d 183, 321 N.E.2d 127 (1974). In determining whether a state statute is contrary to a constitutional provision, the principles of

construction applicable to statutes are equally applicable to the construction of the constitution. *Johnson v. State Electrical Board*, 53 Ill.2d 256, 290 N.E.2d 886 (1972). Thus, the constitution should be read according to the plain meaning of the language and subtle construction for the purpose of limiting its operation must be avoided. *Coalition for Political Honesty v. State Board of Elections*, 65 Ill.2d 453, 3 Ill.Dec. 728, 359 N.E.2d 138 (1976). Moreover, there is no need for interpretation where the words are clear, explicit and unambiguous. *See Bridgewater v. Hotz*, 51 Ill.2d 103, 281 N.E.2d 317 (1972).

■ The prohibition against transporting persons out of the state was originally contained in Article II, § 11 of the 1870 constitution and reincorporated in the 1970 constitution. Article II § 11 has been interpreted to prohibit banishment or deportation. *DuBois v. Gibbons*, 2 Ill.2d 392, 118 N.E.2d 295 (1954). Since, prior to its reincorporation, this provision was interpreted, it must be given the same interpretation here. It is clear that Article I § 11 prohibits banishment and that transfer out of the state is a form of banishment. Thus, the Interstate Corrections Compact is a direct violation of the Illinois Constitution and, therefore, void. State prison officials have no authority to transport prisoners to out of state prisons.

■ At least one of the petitioners, however, is designated to be transferred to a federal penitentiary within the state. Since there is no federally created liberty interest in confinement in a particular prison, due process does not automatically attach to every prisoner transfer. *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). Thus, the next consideration is whether procedural due process attaches to transfers made pursuant to § 5003 and, if so, whether petitioners have received all the process due.

Congress has forbidden nonstatutory confinement in federal prisons 18 U.S.C. § 4001(a). The transfer of state prisoners to federal prisons is authorized by § 5003 provided that "proper and adequate treatment facilities and personnel are available ... for the custody, care, subsistence, education, treatment and training of state prisoners." 18 U.S.C. § 5003. The Seventh Circuit has held that transfer of state prisoners to federal custody is permissible, under this statute, only upon a showing of specialized need. *Lono v. Fenton*, 581 F.2d 645 (7th Cir. 1978). Thus, the federal transfer statute creates a due process interest in transferees. *See Gomes v. Moran*, 468 F.Supp. 542 (D.R.I.1979).

Respondents' argument that *Lono v. Fenton*, 581 F.2d 645 (7th Cir. 1978) does not mandate any hearing requirement regarding the need for specialized treatment is without merit. In *Fenton*, both parties agreed that the prisoner would be entitled to a hearing if § 5003 was construed to require a showing of specialized need; due process procedures are required to determine whether the transfers are justified.

■ The right to a hearing is an essential element of due process. *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). At the very least, due process includes: 1) notice of the proposed transfer; 2) notice of the reasons for the impending transfer; 3) a personal hearing before a decisionmaker; and 4) an opportunity to controvert the factual assertions advanced in support of the proposed transfer. *Gomes v. Travisono*, 490 F.2d 1209 (1st Cir. 1973). Accordingly, the certifications made solely by prison officials do not satisfy the *Fenton* requirements.

■ The next issue is whether petitioners were entitled to the hearings prior to transfers or whether hearings held after the transfers have been effected comport with due process. Courts have consistently recognized that transfers may have serious ramifications for the transferees. *United States ex rel. Gereau v. Henderson*, 526 F.2d 889 (5th Cir. 1976). Therefore, in the absence of an emergency situation, procedural rights must be accorded before the transfer and where an emergency situation makes it impossible to hold the hearing before the transfer, these rights must be granted as soon as the emergency subsides.

*Gomes v. Travisono*, 490 F.2d 1209 (1st Cir. 1973).

Respondents assert that on the day petitioners were transferred to federal custody, a "deadlock" was imposed by the state officials at Stateville because of what "was perceived to be an emergency at Stateville." But, as petitioners point out, the contract between the state and federal respondents permitting state prisoners to be placed in federal custody was signed on February 14, 1979. Yet, no hearings were held prior to the February 24 transfers. Thus, there is some evidence that the decision to transfer may have been made before any emergency existed. Moreover, assuming *arguendo* that the decision to transfer was made during the "retaking of Stateville", and that the "retaking" constituted an emergency, any emergency has since passed. Since no hearings have been held, petitioners' due process rights have been violated.

Accordingly, the writ of habeas corpus is granted. The federal respondent is directed to release petitioners and return them to state custody. Once returned to state custody, no prisoner may be transferred to a prison out of the state and any transfers from a state prison to a federal penitentiary within Illinois may only be effected upon a showing of specialized need at a hearing affording the prisoner his due process rights.