Anthony F. SISBARRO, Plaintiff,
Appellant,

v.

WARDEN, MASSACHUSETTS STATE
PENITENTIARY, Defendant,
Appellee.

No. 78–1381.

United States Court of Appeals,
First Circuit.

Argued Jan. 2, 1979.

Decided Feb. 8, 1979.

**2**

Paul P. Perocchi, Boston, Mass., by appointment of the court, with whom Crane & Inker, Boston, Mass., was on brief, for plaintiff, appellant.

Lee Carl Bromberg, Sp. Asst. Atty. Gen., Dept. of Correction, Boston, Mass., for defendant, appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

Appellant, a Massachusetts state prisoner, was incarcerated originally in Massachusetts State Prison at Walpole. In May of 1974, he was transferred to the Connecticut State Prison at Summers, and then in January of 1975, to the United States Penitentiary in Lewisburg, Pennsylvania. A year later, he was moved once again, this time to the United States Penitentiary in Leavenworth, Kansas, where he currently is imprisoned as a contract prisoner from Walpole.

Appellant filed a pro se complaint in the district court alleging that these transfers were punitive, that they were effectuated without first providing him notice and a hearing, and that he has not been informed of the standards according to which he may be returned to Walpole. These procedures, he claimed, were violative of his due process rights as well as his rights under the First, Fifth, Sixth and Eighth Amendments. He requested both injunctive and monetary relief pursuant to 42 U.S.C. §§ 1983, 1985. The defendant moved to dismiss the complaint under Rule 12(b)(6). The district court held, after argument, that the complaint failed to assert a valid constitutional claim and granted the motion to dismiss. We affirm.

*The due process claim*

At the outset, we note the accuracy of appellant's propositions that a pro se complaint is held to "less stringent standards than pleadings drafted by lawyers" and that a Rule 12(b)(6) motion to dismiss is not the proper remedy for inartful pleading. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). But even construing the complaint in the light most favorable to appellant, we cannot find that it states a legal claim upon which relief can be granted.

Appellant relies on *Gomes v. Travisono*, 490 F.2d 1209 (1st Cir. 1973), *vacated and remanded*, 418 U.S. 909, 94 S.Ct. 3200, 41 L.Ed.2d 1155 (1974), *modified on reconsideration*, 510 F.2d 537 (1st Cir. 1974), in which this court held that transfers of prisoners to out-of-state and federal prisons had been carried out in violation of their procedural due process rights. We framed the analysis as follows: "[i]nvocation of [procedural] rights depends upon whether treatment inherent in the transfer process constitutes 'grievous loss'". 490 F.2d at 1212. His reliance is misplaced, however,

for in *Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) and *Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976), the Supreme Court expressly rejected the "grievous loss" approach to questions of procedural due process in prison transfers and held "that no Due Process Clause liberty interest of a duly convicted prison inmate is infringed when he is transferred from one prison to another within the State, whether with or without a hearing, *absent some right or justifiable expectation rooted in state law that he will not be transferred except for misbehavior or upon the occurrence of other specified events." Montanye v. Haymes, supra,* 427 U.S. at 242, 96 S.Ct. at 2547 (emphasis added).

Although the Court in these cases concerned itself with intrastate transfers, we can see no reasoned basis on which to revert to the *Gomes* analysis, as appellant urges, when the prisoner has been transferred interstate to another state or federal institution, even though *Gomes* involved such a transfer. It may often be true that a prisoner will be moved a longer distance when he is transferred interstate rather than intrastate, resulting in substantial interference with communication and visitation, and that his access to legal materials and lawyers of the state in which he was convicted may be diminished. Greater disadvantages thus may accompany an interstate transfer. But the Court has held that an increase in burdensome conditions does not in itself implicate the due process clause; "the determining factor is the nature of the interest involved rather than its weight." *Meachum v. Fano, supra,* 427 U.S. at 224–25, 96 S.Ct. at 2538. The district court properly concluded, therefore, that "[i]f the burden of disadvantage to the prisoner is no longer the test, [there is] no distinction between interstate and intrastate transfers". Accordingly, we employ the reasoning of *Meachum v. Fano* and *Montanye v. Haymes, supra,* and turn to the law of Massachusetts, the state in which appellant was initially incarcerated and whose prison officials have transferred him from institution to institution, to determine whether

there exists "some right or justifiable expectation" embodied therein that the prisoner "will not be transferred except for misbehavior or upon the occurrence of other specific events". *Montanye v. Haymes, supra,* 427 U.S. at 242, 96 S.Ct. at 2547.

Appellant was transferred from Massachusetts State Prison to Connecticut State Prison pursuant to the New England Interstate Corrections Compact, M.G.L. c. 125, App. §§ 1–1—1–3. Article I of the Compact reads as follows:

> "The party states, desiring by common action to fully utilize and improve their institutional facilities and to provide adequate programs for the confinement, treatment and rehabilitation of various types of offenders, declare that it is the policy of each of the party states to provide such facilities and programs on a basis of cooperation with one another, thereby serving the best interests of such offenders and of society and effecting economies in capital expenditures and operational costs. The purpose of this compact is to provide for the mutual development and execution of such programs of co-operation for the confinement, treatment and rehabilitation of offenders with the most economical use of human and material resources."

Appellant's contention that this provision establishes a right of hearing before transfer, which would show that the move was for "confinement, treatment and rehabilitation" rather than punishment, is semantically ingenious but unpersuasive. Were appellant's reading correct, the Interstate Compact would be inapplicable to all prisoners who sought to be transferred for their own or others' safety, for disciplinary reasons, for reasons of overcrowding, health, etc. The provision is a broad statement of purpose, envisioning cooperation and flexibility among members of the Compact, and in no way limits the discretion of the commissioner of correction to transfer a prisoner to facilities in a member state. It therefore does not "create the kind of substantive interest which is required before a state created 'liberty' interest can be said to

exist." *Lombardo v. Meachum,* 548 F.2d 13, 15 (1st Cir. 1977).

■ Appellant likewise has not been vested with an interest protected by procedural due process with respect to his transfers from state prison to the federal institutions in Pennsylvania and Kansas. The Massachusetts statute which empowers the commissioner of correction to transfer "any prisoner sentenced to state prison to any available or appropriate correctional institution maintained and supervised by the federal government within the confines of continental United States", M.G.L. c. 127, § 97A, does not condition a transfer upon a showing of "appropriateness" as appellant suggests; the provision places no restrictions on the making of that determination by the commissioner.

■ Nor, in our opinion, is appellant's argument furthered by 18 U.S.C. § 5003 which authorizes the United States Attorney General, "when the Director [of the Federal Bureau of Prisons] shall certify that proper and adequate treatment facilities and personnel are available", to contract with state officials "for the custody, care, subsistence, education, treatment, and training" of state prisoners.* This provision "merely authorizes the federal government to make arrangements with a state whereby a state's prisoners may be confined in a federal institution when the state feels that either it or the prisoner may benefit from [the] arrangement". *United States ex rel. Gereau v. Henderson,* 526 F.2d 889, 894 (5th Cir. 1976).

Unlike the majority in a closely divided Seventh Circuit case, *Lono v. Fenton,* 581 F.2d 645, 646–47 (7th Cir. 1978) (en banc), we do not agree that because the statute refers to "treatment facilities", a prisoner is entitled to a hearing on [the] issue [of his need for specialized treatment] both by the "due process clause and the statute itself." A House Report at the time of the provision's passage may support such a reading,

H.R.Rep.No.1663 at 2, [1952] U.S.Code Cong. & Admin.News pp. 1420, 1421, but, as the *Lono v. Fenton* dissent notes, neither the language of the statute nor its administrative interpretation by the Bureau of Prisons suggests "a substantive limitation or restriction on the purposes for which prisoners may be transferred." *Id.* at 649. To the contrary, the provision allows a prisoner to be contracted for "custody, care, subsistence, education, treatment, and training"—a list that runs the gamut of penological purposes. *See Gomes v. Travisono, supra,* 490 F.2d at 1216 n. 13, *vacated and remanded on other grounds,* 418 U.S. 909, 94 S.Ct. 3200, 41 L.Ed.2d 1155 (1974) ("Nor do we feel . . . investigation of receiving prisons is required by the New England Corrections Compact or 18 U.S.C. § 5003. In addition, we agree . . . that neither the Compact nor federal law preclude transfers for nonrehabilitative purposes.").

*Other constitutional claims*

■ Appellant also maintains, in conclusory fashion on appeal, that the transfers coupled with the alleged failure of the authorities to inform him when and on what conditions he will be returned to Massachusetts state prison constitute deprivations of his First, Sixth and Eighth Amendment rights. The district court properly dismissed the complaint with respect to these constitutional claims. While the appellant has been subjected to a considerable number of possibly burdensome uprootings during his prison term, such transfers are neither unusual nor "cruel in the constitutional sense". *Hoitt v. Vitek,* 361 F.Supp. 1238, 1250–51 (D.N.H.), *aff'd sub nom. Laaman v. Vitek,* 502 F.2d 1158 (1st Cir. 1973); *see Rodriguez-Sandoval v. United States,* 409 F.2d 529, 532 (1st Cir. 1969). Furthermore, there is no suggestion in the complaint, its accompanying memorandum or this appeal that defendant or any other prison official have interfered with the other constitution-

* We recognize that appellant's quarrel under this provision is probably with the federal officials who contracted with the state for his transfer rather than the Massachusetts prison officials. However, in light of our conclusion that the section provides no basis for relief, we need not concern ourselves with this or other possible defects in the pro se complaint.

al rights appellant enumerates. His statements that an interstate transfer "at least attenuates access to counsel and may even cut it off and can have a prejudicial effect on legal proceedings" may well be accurate as general propositions, but they state no claim by this prisoner against prison officials.

*Affirmed.*