**Douglas GOMES et al.,
Plaintiff-Appellant,**

v.

**John J. MORAN, Director of Corrections,
State of Rhode Island, et al.,
Defendants-Appellees.**

**No. 79–1130.**

United States Court of Appeals,
First Circuit.

Argued June 8, 1979.

Decided Sept. 18, 1979.

Ralph J. Gonnella, Providence, R. I., with whom Alden C. Harrington, Barbara Hurst and John F. Cicilline, Providence, R. I., were on brief, for plaintiff-appellant.

Maureen E. McKenna, Sp. Asst. Atty. Gen., Providence, R. I., with whom Dennis

J. Roberts, II, Atty. Gen., Providence, R. I., was on brief, for defendants-appellees.

Before COFFIN, Chief Judge, CAMP-BELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

This is another salvo, and perhaps the final one, in the continuing battle between plaintiff prisoners and the State of Rhode Island as to what due process rights prison inmates are entitled when transferred within or out of the Rhode Island prison system.

On September 20, 1978, fifteen inmates at the Rhode Island Adult Correctional Institution were moved without notice or hearing to the Federal Prison at Danbury, Connecticut, preparatory to being transferred to different federal prisons throughout the country. Asserting that the transfers violated a consent decree entered into between the state and Rhode Island prison inmates on February 18, 1975, plaintiffs moved for an immediate injunction, return of the transferred inmates, and asked that the defendants be held in contempt. On January 22, 1979, the district court issued a Memorandum and Order rejecting plaintiffs' claim of violation of the consent decree, but ruling that prison inmates had a "due process liberty interest" rooted in Rhode Island law which protected them against arbitrary transfers. A hearing was scheduled to determine what process was due and when it should be afforded. Before the hearing was held, we handed down our opinion in *Sisbarro v. Warden,* 592 F.2d 1 (1st Cir. 1979). In *Sisbarro,* a Massachusetts prison inmate asserted that his interstate transfer violated his right to due process because he had no notice or hearing prior to the transfer. He claimed that he

had a "due process liberty interest" rooted in Massachusetts law, the New England Interstate Corrections Compact, and the Federal Interstate Transfer Statute. Relying on *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), and *Montayne v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976), we rejected the claim and held that none of the statutes gave the inmate due process protection against an interstate transfer. In the light of *Sisbarro,* the district court, on March 2, 1979, reversed its prior holding of January 22 and dismissed plaintiffs' action. The order of January 22 was incorporated by reference into the dismissal order.[1]

Plaintiffs do not appeal the district court's application of *Sisbarro* to Rhode Island law. Their appeal is bottomed on the assertion that, since the consent decree of February 18, 1975, was never rescinded or modified, the transfers were forbidden by it. They argue that the decree remained in full force and effect notwithstanding a subsequent change in the law that destroyed the basic premise on which it was formulated. They seek damages and a finding of civil contempt against defendants.

The decree provides in pertinent part:

B. If an emergency exist which renders it necessary to transfer inmates without delay, and if the Director, or his designee, has ascertained that there are no other facilities within the State of Rhode Island in which the inmate could be detained pending a hearing, as described above, the procedures set forth in paragraph 2A above need not be followed prior to transfer. In such an event the following procedures shall be observed:

1. The inmate shall be furnished with advance written notice of the proposed

---

1. In its order of January 22, the district court recognized, as we did in *Sisbarro v. Warden,* 592 F.2d 1 (1st Cir. 1979), that *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), and *Montayne v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976), were controlling. However, it gave the Rhode Island Interstate Transfer Statute a more expansive reading than we did the Federal Transfer Statute and found that, under the holdings of *Meachum* and *Montayne,* Rhode Island prison in-

mates had some right or justifiable expectation rooted in Rhode Island law that they would not be transferred except for misbehavior or some other specified event. *Montayne v. Haymes, supra,* 427 U.S. at 242, 96 S.Ct. 2543. After reading *Sisbarro,* the court concluded that our analysis of the Federal Transfer Statute (that there was no basis for a protected liberty interest) was applicable to the Rhode Island Interstate Transfer Statute.

transfer, stating the specific reasons therefor.

2. The inmate shall be given an opportunity to be heard on the question of transfer before the Warden or if the warden has been involved in the investigation or compilation of information concerning the proposed transfer, a person designated by the Director of the Department of Corrections not so involved.

3. At the hearing the inmate shall be offered an opportunity to personally controvert factual assertions that have been advanced in support of the decision to transfer.

4. As soon as the emergency has subsided but in no event later than 30 days thereafter, the inmate shall be returned to Rhode Island for a hearing in accordance with the procedures set forth in paragraph 2A above.

In order to understand the January 22 and March 2 orders of the district court, a short history of the cases leading up to the consent decree is required. The district court dealt extensively with due process rights of prisoners relative to transfers in *Gomes v. Travisono,* 353 F.Supp. 457 (D.R.I. 1973). Its order in that case specifically eliminated notice and pretransfer hearings in emergency situations. *Id.* at 472. On appeal, we affirmed in part and reversed in part, and specifically stated:

> We observe at the outset that we endorse the exception for emergencies, provided for by the district court. We recognize that present or impending disturbances which might overtax the control capacity of a prison creates a dominant interest in prison authorities being able to act without delay if they feel that delay would endanger the inmate, others, or the prison community.

*Gomes v. Travisono,* 490 F.2d 1209, 1215 (1st Cir. 1973). Our decision was vacated and remanded by the Supreme Court "for further consideration in light of *Wolff v. McDonnell*" [418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935] in *Baxter, et al. v. Palmigiano,* 418 U.S. 908, 94 S.Ct. 3200, 41 L.Ed.2d 1155 (1974). In our remand decision, *Gomes v. Travisono,* 510 F.2d 537 (1974), we stated again "that emergency situations may require postponement of whatever procedures are required." *Id.* at 539.

This was the state of the law when the consent decree was entered into. The section dealing with emergency transfers was directly contrary to the law as explicitly stated by the district court and repeated twice by us.[2] With this background, the district court's reaction when presented with plaintiffs' motion for damages and contempt findings was predictable.

Plaintiff's have vigorously asserted the applicability of the *Gomes* injunction to the transfers of September 20. They have argued that no justification existed here for the alleged transfer of these inmates without prior notice and hearings, relying on the emergency transfer provisions of the *Gomes* Judgment (paragraph 2(B)). It is apparently their view that the *Gomes* injunction, because it purports to apply to "regular" and emergency transfers of inmates, compels the Department of Corrections to afford prior procedural protection to transferees in any and all circumstances.

This Court never intended to place that kind of straightjacket on prison officials in exercise of their legitimate authority. Nor does the Constitution or relevant decisional law require that it do so. When prison inmates assert interests which fall within the scope of protection of the Due Process Clause, it is incumbent upon a reviewing court to balance those interests against the needs of prison officials in their efforts to maintain the safety and security of a correctional institution. *Wolff v. McDonnell,* 418 U.S. 539, 556; [94 S.Ct. 2963, 41 L.Ed.2d 935] (1973). Where security considerations and the potential for violence weigh heavily in favor of affording prison officials maximum free-

---

2. We were unable to understand defendants' statement in their brief at page 8: "In short, the defendants agreed to be bound by the terms of the *Gomes* injunction only in light of decisional law."

dom of choice in their decision making, courts may be forced to strike "the balance that the Due Process Clause demands", *Wolff, supra,* at 561, [94 S.Ct. 2963,] with the result that only post-transfer procedural safeguards are required. No constitutional rule dictates that the delay of due process procedures is impermissible in the context of a prison emergency.

This was not only a correct statement of the law directly applicable to this case; it was a modification of the decree to the effect that, under emergency situations, transfers could be made without prior notice and hearing, and all that was required was a post-transfer hearing.

There can be no doubt that a court has the power to change or revoke a consent judgment. The seminal case in this field, *United States v. Swift & Co.,* 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932), held: "A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need. *Id.* at 114, 52 S.Ct. 460, at 462. The court directly rejected the contention that a consent decree was to be treated as a contract and not as a judicial act. *Id.* at 115, 52 S.Ct. 460. *See also System Federation v. Wright,* 364 U.S. 642, 646–47, 81 S.Ct. 368, 5 L.Ed.2d 349 (1961).

Plaintiffs are correct that prior to the time the transfers took place, the consent decree had not been modified, and we recognize that, technically speaking, defend-ants violated it. We are also fully aware of the deference that courts should give to decrees negotiated by the parties. *The Coalition of Black Leadership v. Cianci,* 570 F.2d 12 (1st Cir. 1978); *Morris v. Travisono,* 509 F.2d 1358, 1361 (1st Cir. 1975). But, as Mr. Justice Harlan noted, "The parties cannot, by giving each other consideration, purchase from a court of equity a continuing injunction." *System Federation v. Wright, supra,* 364 U.S. at 651, 81 S.Ct. at 373. This was not the usual type of consent decree involving money and business practices. The ability of prison officials to deal with an emergency situation by the expeditious transfer of dangerous inmates might well be a life and death matter. Moreover, the district judge who had been involved in all facets of this case from the beginning did not construe the decree applying to the situation at issue and stated that he "never intended to place that kind of straightjacket on prison officials in exercise of their legitimate authority." We cannot say the court abused its necessarily broad authority with respect to a judicial decree by refusing to bind defendants to a decree that is clearly contrary to the thrice announced law of the case and ignores the reality of prison emergency requirements. While we cannot condone the fact that defendants ignored the decree, the district court did not exceed its powers in these unique circumstances by refusing to stand on the usual requirement that judicial modification be sought in advance or in refusing to interpret or enforce the decree as requested by plaintiffs.[3]

---

**3.** While plaintiffs dispute that an emergency existed, and we do not purport to decide the matter, defendants may well have feared that they were faced with a serious emergency requiring swift action.

Judge Coffin has misgivings about the breadth of discretion the majority opinion affords the district judge to read the requirements of the consent decree in a manner consistent with current law. He agrees the decree gave the prisoners legal rights in excess of those required by the due process clause, but believes that it may not for that reason be ignored. He concurs in the result, however, on the principle that civil contempt is proper only when it serves a remedial purpose. *See Hartford-Empire Co. v. United States,* 323 U.S. 386, 435, 65 S.Ct. 373, 89 L.Ed. 322; *Parker v. United States,* 153 F.2d 66, 70 (1st Cir. 1946). Here, upon the return of the prisoners to Rhode Island and the probable dissolution of the consent decree pursuant to Fed.R.Civ.P. 60(b), the prisoners could be retransferred without any notice and hearing. Thus, he feels, any injunctive relief afforded appellants would be evanescent and it is not an abuse of discretion to deny equitable relief which secures no benefit to the requesting party.

Judge Coffin also feels that, since the transfers were in contradiction of the literal terms of an outstanding decree, a notation should be made to this effect on the case record of each inmate, and such notation should include the instruction that the fact of such transfer should not be considered in any future parole or disciplinary decision. Judges Bownes and Campbell feel that this is a matter that is best left to the discretion of the district court.

The court was under a duty to follow the law of this circuit as announced in *Sisbarro*. The power of a court to change a decree so as to bring it into conformity with the law has long been recognized. *System Federation v. Wright, supra,* 364 U.S. at 651, 81 S.Ct. 368; *United States v. Swift & Co., supra,* 286 U.S. at 115, 52 S.Ct. 460; *Theriault v. Smith,* 523 F.2d 601 (1st Cir. 1975); *Securities and Exchange Commission v. Thermodynamics, Inc.,* 464 F.2d 457, 460 (10th Cir. 1972). The order of March 2 ruling that prisoners had no due process rights relative to interstate transfers was correct and necessary.

The orders of the district court are in all other respects affirmed.

No costs to either party.