Herbert William LAWRENCE, Petitioner,

v.

Robert I. ELSEA,[1] Warden, Respondent,

Cornelius D. Hogan, Intervenor.

Peter L. MULHOLLAND, Petitioner,

v.

Robert I. ELSEA,[1] Warden, Respondent,

Cornelius D. Hogan, Intervenor.

Christopher E. WETMORE, Petitioner,

v.

Robert I. ELSEA,[1] Warden, Respondent,

Cornelius D. Hogan, Intervenor.

Nos. 78-C-526, 79-C-203 and 79-C-206.

United States District Court,
W. D. Wisconsin.

Oct. 19, 1979.

Herbert William Lawrence, pro se.

Frederick J. Erhardt, Asst. U. S. Atty., U. S. Dept. of Justice, Madison, Wis., for respondent Elsea in No. 78-C-526.

Peter B. Brittin, Asst. Atty. Gen., State of Vermont, Montpelier, Vt., for intervenor Hogan.

Peter L. Mulholland, pro se.

Beneva Weintraud, U. S. Dept. of Justice, Washington, D. C., for respondent Elsea in Nos. 79-C-203 and 79-C-206.

Christopher E. Wetmore, pro se.

## ORDER

JAMES E. DOYLE, Chief Judge.

Petitioners Wetmore and Mulholland have brought civil actions in mandamus pursuant to 28 U.S.C. § 1651. Petitioner Lawrence has brought a habeas corpus action pursuant to 28 U.S.C. § 2241. Leave to proceed *in forma pauperis* has been granted petitioners.

1. In petitions for writs of habeas corpus, the custodian must be named as respondent. 28 U.S.C. § 2242. Because Robert I. Elsea has replaced Ogis Fields as warden at the Federal Correctional Institution at Oxford, Wisconsin, Warden Elsea has been substituted as respondent in these actions.

Petitioners were convicted in Vermont state courts. They were transferred from Vermont state custody to federal custody under an agreement between the state of Vermont and the United States. These suits allege that this agreement and petitioners' transfers pursuant to this agreement are contrary to 18 U.S.C. § 5003.[2] As relief, petitioners ask for release from federal custody. The effect of an order granting such relief would be petitioners' return to Vermont state custody.

*Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), held that a court must treat an action as one in habeas corpus when release from confinement is requested. Because petitioners are asking release from federal confinement, they have an adequate remedy in habeas corpus. Therefore, I shall treat the three petitions together in this order as petitions for writs of habeas corpus.

In these three actions, respondent has submitted pleadings and briefs which are identical in all material respects. Cornelius Hogan, Commissioner of Corrections of the State of Vermont, has filed a motion for leave to intervene and a brief in support of that motion in each case. In all material respects, these motions and briefs are identical. Therefore, I assume that respondent and movant Hogan would have defended against petitioner Wetmore and Mulholland's actions in the same way had they been brought as habeas corpus actions. Therefore, I find that respondent and movant are not prejudiced by the change in nature of petitioner Wetmore and Mulholland's motions.

### Motion for Leave to Intervene

Cornelius D. Hogan, Vermont Commissioner of Corrections, has moved for leave to intervene as a respondent in these actions.[3] That motion was brought pursuant to Rule 24(a)(2), Federal Rules of Civil Procedure, which provides:

(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action:

. . . . .

(2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Petitioners and movant Hogan agree I must test this claimed right to intervene against the following standards:

(1) Movant must claim an interest relating to the property or transactions which is the subject of the action;

(2) Movant must be so situated that the disposition of the action may impair his ability to protect that interest; and

(3) Movant must demonstrate that the existing parties inadequately represent this asserted interest. 7A Wright & Miller, *Federal Practice and Procedure: Civil,* § 1908.

Petitioners concede that requirements (1) and (2) have been met in this case, but they contend that requirement (3) has not been met and that the motion for leave to intervene should be denied. Petitioners rely on *United States v. Board of School Commissioners, Indianapolis, Indiana,* 466 F.2d 573 (7th Cir. 1972), *cert. denied sub nom., Citizens of Indianapolis for Quality Schools, Inc. v. United States,* 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1972), in which the court found:

**2.** 18 U.S.C. § 5003 provides:

(a) The Attorney General, when the Director shall certify that proper and adequate treatment facilities and personnel are available, is hereby authorized to contract with the proper officials of a State or Territory for the custody, care, subsistence, education, treatment, and training of persons convicted of criminal offenses in the courts of such State or Territory: *Provided,* That any such contract shall provide for reimbursing the United States in full for all costs or other expenses involved.

**3.** Respondent Elsea neither opposes nor supports this motion.

. . . [R]epresentation is adequate if no collusion is shown between the representative and an opposing party, if the representative does not have or represent an interest adverse to the proposed intervenor and if the representative does not fail in the fulfillment of his duty.

*Id.* at 575 (quoting *Martin v. Kalvar Corp.,* 411 F.2d 552, 553 (5th Cir. 1969).)

However, in *Trbovich v. Mine Workers,* 404 U.S. 528, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972), the Court applied a different standard than that used by the Seventh Circuit in *United States v. Board of School Commissioners.* The *Trbovich* Court held movant must show only "that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Id.* at 538 n. 10, 92 S.Ct. at 636 n. 10. *See also* 3B *Moore's Federal Procedure* ¶ 24.09–1[4] (1969). Movant's burden under this standard is not as great as it would be under the test announced by the Seventh Circuit in *United States v. Board of School Commissioners.* I am bound to follow the test announced by the United States Supreme Court.

Movant Hogan argues that he has an interest unique to him in preserving the ability to transfer Vermont State maximum security prisoners to the federal prison system. I infer from this argument that movant believes his interest will not be protected adequately by respondent Elsea. I am persuaded by this argument. Respondent Elsea's interest is in defending the United States Bureau of Prison's (BOP) right to contract with state correctional offices for agreements such as the one between the United States and the State of Vermont. That interest is of a different character and magnitude from the interest of movant in maintaining Vermont's right so to contract.

I find this state interest may not be represented adequately by respondent Robert Elsea. I shall grant movant leave to intervene in this action.[4]

### Facts

Based on all pleadings and affidavits submitted in these cases, I find there is no genuine issue as to the following material facts:

Petitioners have been convicted of serious felonies and have been found to require maximum security incarceration.

On approximately April 27, 1977, the Vermont Department of Corrections transferred petitioner Wetmore to the custody of the BOP. On approximately January 27, 1979, the Vermont Department of Corrections transferred petitioner Mulholland to the custody of the BOP. On approximately February 28, 1978, the Vermont Department of Corrections transferred petitioner Lawrence to the custody of the BOP.

Petitioners were transferred under the purported authority of 18 U.S.C. § 5003, 28 Vermont Statutes Annotated § 706,[5] and an agreement between the United States and the State of Vermont. The transfers were against petitioners' will. Petitioners are now confined at the Federal Correctional Institution at Oxford, Wisconsin (FCI-Oxford), where they are serving their Vermont state sentences. Petitioners were transfer-

---

**4.** Petitioners have expressed concern that allowing intervention will alter the issues before me in this lawsuit. Materials submitted by intervenor Hogan prompted this concern. These materials addressed the problems which will befall the Vermont Department of Corrections if I grant relief to petitioners.

The fact that Mr. Hogan made such arguments will not affect the outcome of these petitions. The issues presented by petitioners and answered by respondent are the issues to be decided here. To the extent that respondent Hogan addressed these issues, his pleadings, briefs and affidavits will also be considered.

**5.** 28 V.S.A. § 706 provides:

(a) The commissioner may enter into and execute a contract or contracts with the United States for the transfer of any inmate from any facility to a federal correctional facility when, in his opinion, the inmate needs particular treatment or special facilities available at the federal correctional facility; or, all in-state treatment and rehabilitative programs available for the inmate have been considered and found unsuitable; or, all in-state security and custody alternatives for the inmate have been considered and found unsuitable; or, the inmate voluntarily requests transfer.

red to BOP custody because Vermont treatment and rehabilitation programs had been determined unsuitable for petitioners and because Vermont correctional facilities had inadequate security for the protective custody of petitioners.[6]

Petitioners had pre-transfer hearings conducted by Vermont prison officials. These hearings were held in accordance with Vermont Department of Corrections Policy No. 891. That policy establishes three criteria for transfer of Vermont prisoners to federal custody:

1. All in-state treatment and rehabilitation programs available for that individual have been considered and determined unsuitable.

2. All in-state alternatives in the area of security have been considered and found unsuitable for providing the required degree of security or protective custody for a particular resident.

3. A resident voluntarily requests transfer.

At their Vermont hearings, petitioners were found to meet criteria one and two. They met these criteria because there was no long-term, maximum security prison in Vermont. Because there was no such facility, treatment and programs available to minimum and medium security prisoners in Vermont were not available to petitioners. Because the federal prison system has maximum security facilities, it also has treatment and programs for maximum security prisoners.

The United States did not afford petitioners a pre-transfer hearing. Neither the United States Attorney General nor the Director of the Bureau of Prisons made any finding that petitioner Wetmore, petitioner Mulholland or petitioner Lawrence required specialized treatment available in the federal prison system but unavailable in the Vermont prison system. No facts are before the court which show that any of these petitioners has any such specialized treatment needs.

At no time has the Vermont Department of Corrections or the BOP informed petitioners of any specialized treatment available to petitioners at FCI-Oxford but unavailable in the Vermont prison system.

The state of Vermont and the United States entered into an agreement for the transfer of Vermont maximum security prisoners to federal custody. As amended, that agreement provides:

(1) Relying on this agreement, the State of Vermont would close its only maximum security prison;

(2) The Director of the BOP certified federal prisons could house Vermont prisoners in need of close supervision (maximum security);

(3) Without prior federal approval, Vermont officials could transfer a maximum of 40 prisoners to a BOP facility. The BOP would provide complete care for these prisoners and afford them all program opportunities available to federal prisoners;

(4) Unless otherwise agreed, Vermont state prisoners transferred under this agreement would be delivered to the Metropolitan Correctional Center-New York. Thereafter, BOP officials would transfer such prisoners to a federal prison appropriate for their custody, care and treatment;

(5) The State of Vermont could demand immediate custody of any prisoner transferred under this agreement and either party could terminate this agreement upon reasonable notice and subject to certain specified conditions.[7]

At this time, the State of Vermont has no maximum security prison. Vermont does have limited space for the short-term hous-

---

6. Petitioners Wetmore and Mulholland assert they were transferred for these reasons. In his reply, intervenor disputes this statement of the reasons for the transfers, referring the court to the affidavit of intervenor and the documents attached to that affidavit. The affidavit and documents state the same reasons for the transfers as do petitioners' complaints. Therefore, I find petitioners' statements of fact to be the ones which prompted the transfers.

7. These conditions are irrelevant to decision in this case.

ing of maximum security prisoners in its medium security prison at St. Albans, Vermont. However, in the case of prisoners with long sentences who are in need of close supervision, federal BOP facilities offer security and prisoner programs which are unavailable in the Vermont prison system.

## OPINION

■ In his brief and affidavits, intervenor Hogan states that prison authorities are suited to make decisions regarding prison management and that courts are not so suited. He also states that recently, many courts have adopted a "hands-off" attitude in prisoner civil rights cases. I express no opinion on the correctness of these views. I note only that, were they entirely correct and controlling in federal courts, they would have no effect on the decision in these cases. The court is not now faced with decisions by prison officials which allegedly impinge on inmates' constitutional rights. Nor is the court faced with questions about the constitutionality of the treatment afforded inmates in prison. The issue to be decided has no constitutional dimension. It is a statutory question. I am confident that neither the Supreme Court nor any lower federal court would entertain the idea that, on a question of statutory interpretation, courts should pay more deference to prison officials' interpretations than it should to an interpretation by any other government official. I must judge § 5003's meaning as I would judge the meaning of a statute in any other case.

The issues for decision in this opinion are: (1) Whether 18 U.S.C. § 5003 authorizes transfer of a state prisoner to the federal prison system without a hearing and a finding by the BOP that the prisoner needs specialized treatment which is available in the federal system and unavailable in the state system; and

(2) If so, whether the BOP found that petitioners Wetmore, Mulholland and Lawrence presented such specialized treatment needs.

In 1978, the Seventh Circuit Court of Appeals decided *Lono v. Fenton*, 581 F.2d 645 (7th Cir. 1978). In *Lono*, petitioner had been transferred from State of Hawaii Custody to United States Custody pursuant to Hawaii Revised Statutes § 353–18 and a contract between the State of Hawaii and the United States. This transfer was made without the consent of petitioner and without a hearing.

Petitioner was a citizen of Hawaii. He argued a pre-transfer hearing was necessary because he suffered a grievous loss when he was transferred from a Hawaii state prison to a federal prison outside the state. Recognizing that, after *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), a claim of such grievous loss does not automatically mandate a hearing, petitioner also argued that § 5003 forbade such transfers unless the BOP made a pre-transfer finding that the prisoner had specialized treatment needs, the BOP could fulfill those needs, and the State of Hawaii could not.

*Lono* contains an extended discussion of § 5003's legislative history and an examination of case law interpreting § 5003.[8] I find it unnecessary to repeat these discussions here. The court concluded:

It was not intended by Section 5003 to put the federal government in the rent-a-prison business unless there was some special treatment need with which the state required assistance. Absent that special need the states were left to care for their own.

581 F.2d at 648.

The *Lono* court held a BOP hearing was necessary before a state prisoner could be transferred to federal custody. The court

---

8. Intervenor argues that the *Lono* court relied on legislative history in deciding for petitioner. That is not the case. *Lono* was decided based on the plain meaning of § 5003. The court's discussion of legislative history was dicta, included because respondent had argued that the legislative history of § 5003 required decision in his favor. The court concluded the legislative history as well as the plain meaning of § 5003 supported petitioner's position. *Lono v. Fenton, supra* at 647.

stated that at such a hearing a finding must be made that the prisoner would be afforded specialized treatment in the federal prison system which was not available to him in the state prison system. I am bound by the Seventh Circuit's decision in *Lono.*[9]

Federal prisons may confine persons only in accordance with an Act of Congress. 18 U.S.C. § 4001(a). Section 5003 is the only provision for the transfer of a state prisoner to the federal system. I now hold that unless the Attorney General or the Director of the BOP made a pre-transfer finding, after a hearing, that petitioners needed specialized treatment available to them in the federal prison system, but unavailable in the State of Vermont prison system, petitioners' transfers did not comply with 18 U.S.C. § 5003 and were unlawful.

Intervenor argues that the Vermont hearing provided each petitioner is sufficient "as a matter of law," as a finding of specialized treatment need and availability. I could not accept that statement without first accepting intervenor's argument that petitioners' need for confinement in a maximum security prison constitutes a need for specialized treatment under § 5003.[10] However, it is not necessary for me to decide that question. Section 5003 requires that the Attorney General, after certification of treatment need by the Director of the BOP, may contract for the housing of state prisoners in federal prisons. Thus, it is clear, from the language of § 5003, that the finding of specialized treatment need must come in each case from the Director of the BOP. In the present cases, the United States accepted these prisoners without any such finding. By the terms of the agreement between the United States and Vermont, the United States had no discretion to accept or to reject prisoners based on treatment availability, treatment need, or on any other criterion.

Even were the Vermont procedure adequate, it would not substitute for the statutorily mandated BOP finding. The Vermont state findings, after a hearing in each of these cases, included general statements that petitioners could not be incarcerated at the proper security level in Vermont institutions. Such general findings do not support respondent's and intervenor's position that the requirements of § 5003, as interpreted in *Lono,* have been met. The BOP may not rent prison space to states at the convenience of the BOP and the states. It is just such a "rent-a-prison" system which the *Lono* court specifically condemned. I now hold that the BOP failed to comply with 18 U.S.C. § 5003 when it accepted custody of petitioners pursuant to its agreement with the State of Vermont and with no finding of specialized treatment needs.

Therefore, these writs of habeas corpus shall issue. It is ordered that the United States Bureau of Prisons release petitioners Wetmore, Mulholland and Lawrence to the custody of the Vermont Division of Corrections within 30 days of the date this order is signed. Upon failure to comply with this order, without just cause, respondent Elsea shall discharge petitioners from custody.

---

9. Intervenor Hogan invites the court to hold that *Lono* was incorrectly decided. In his briefs, intervenor argues that the *Lono* interpretation of § 5003 is contrary to the great weight of authority. Of the cases cited by intervenor, only one dealt with the question before the court. In *Sisbarro v. Warden,* 592 F.2d 1 (1st Cir. 1979), the court rejected the *Lono* reasoning and held that BOP authorities had wide discretion to accept state prisoners into the federal prison system. As I am bound to follow the decision of the Seventh Circuit, I must reject the decision of the First Circuit.

10. Treatment, as used in § 5003, includes the provision of medical care and "corrective and preventive guidance and training designed to protect the public by correcting the antisocial tendencies of . . . offenders." H.R.Rep. No. 1663 at 2, (1952) U.S.Code Congressional and Administrative News, at 1420, 1421 (quoting 18 U.S.C. § 5006(f) (amending 18 U.S.C. § 5006(g)) (1952)).