For these reasons, the judgment of the district court is

*Affirmed.*

Cora CORNELIUS, et al., Plaintiffs, Appellees,

v.

William HOGAN, et al., Defendants, Appellants.

No. 81–1197.

United States Court of Appeals, First Circuit.

Argued Sept. 16, 1981.

Decided Nov. 2, 1981.

Judith S. Yogman, Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., Boston, Mass., was on brief, for defendants, appellants.

Nancy Lorenz, Boston, Mass., with whom Barbara Sard, Roxbury, Mass., was on brief, for plaintiffs, appellees.

Before CAMPBELL, VAN DUSEN * and BREYER, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

This is an appeal from rulings of the United States District Court for the District of Massachusetts construing a consent decree to apply to certain services now provided by the Massachusetts Department of Social Services ("DSS"), and binding DSS and its commissioner to the decree. We affirm.

This case began in 1973 when a group of welfare recipients filed a complaint in federal court against the Commissioner of the Massachusetts Department of Public Welfare ("DPW") and the Secretary of the Executive Office of Human Services ("OHS"), alleging that defendants had failed to provide them and the class they purported to represent with financial, supportive, and emergency welfare services, either entirely or with reasonable promptness, as required by the Social Security Act, 42 U.S.C. §§ 301 *et seq.*, and regulations thereunder. The district court certified a plaintiff class, and found that defendants had violated the following provisions of the Act and its regulations: with respect to Aid to Families with Dependent Children ("AFDC"), 42 U.S.C. § 602(a)(10); with respect to Medical Assistance ("MA"), 42 U.S.C. § 1396a(a)(8); and with respect to Supplemental Security Income ("SSI"), 45 C.F.R. § 222.5. *Cornelius v. Minter*, 395 F.Supp. 616 (D.Mass.1974). These programs were and are administered by DPW, which is a department within OHS, and are funded in large part by the federal government under a "scheme of cooperative federalism," *see King v. Smith*, 392 U.S. 309, 316, 88 S.Ct. 2128, 2132, 20 L.Ed.2d 1118 (1968).

Following these determinations, the parties undertook extensive studies of the time needed by DPW to provide these services. They then began negotiations on the language of a consent decree in 1977, and submitted a proposed decree to the court on April 14, 1978, which included both language agreed on by the parties and alternative versions of disputed language. In addition to covering AFDC, MA, and SSI, the decree also provided for the timely provision of social services then provided by DPW pursuant to Title XX of the Act, 42 U.S.C. §§ 1397 *et seq.*, and Title IV–B, 42 U.S.C. §§ 620 *et seq.* After determining which of the disputed language alternatives to incorporate, the court approved the decree in June 1978, and entered it as a final judgment and permanent injunction on April 16, 1979. The decree specifies what constitutes "reasonable promptness" for particular services, and provides guidelines

---

* Senior Circuit Judge of the Third Circuit, sitting by designation.

for the implementation of and monitoring of compliance with the decree. The decree covers those services "which the Department of Public Welfare administers and which it was directly providing on October 21, 1974." It is signed by the Secretary of OHS, the Commissioner of DPW, the Secretary of the Commonwealth's Executive Office of Administration and Finance, whom the court had added as a party defendant, members of the Attorney General's department, as attorneys for defendants, and the attorneys for plaintiffs.

The present dispute arose as a consequence of a statute enacted by the Massachusetts legislature soon after entry of the consent decree. Under this, responsibility for the social services provided by DPW under Titles XX and IV–B was transferred to DSS,[1] a newly created department within OHS. *See* St.1978, c. 552, as amended by St.1979, c. 795. Mary Jane England was appointed Commissioner of DSS on June 1, 1979. DSS assumed responsibility for delivering certain of these services in October 1979, but DPW continued to provide them as the delegee of DSS until July 1, 1980, when all the social service delivery functions were transferred from DPW to DSS.

On June 27, 1980, defendants filed a motion to "clarify" the consent decree, seeking a ruling that the transfer of responsibility for social services from one department within OHS to another mandated that the services could no longer be covered by the decree, or in the alternative, requesting the court to vacate the decree for one year as it applied to these services. Plaintiffs opposed this motion, and on October 7, 1980, filed a motion to join England, in her capacity as Commissioner of DSS, as a party defendant; defendants opposed this motion.

After a hearing on February 5, 1981, the district court ruled that the consent decree still covered the relevant social services, even though they were now provided by DSS rather than DPW, joined England as a

defendant, and refused to vacate the decree temporarily. The court did, however, agree to give DSS a "grace period," and a full year in which to begin submitting the monitoring reports required by the decree. Defendants appealed.

On appeal, defendants raise three issues: first, whether the district court erred in construing the decree to cover social services formerly provided by DPW but now provided by DSS; second, whether the court erred in joining England as a party defendant and binding DSS to the decree; and third, whether the court erred in refusing to vacate the decree for one year. We shall address each of these issues in turn.

### 1. Construction of the Decree

■ Defendants urge that it was error to construe the decree to apply to DSS and the social services which it now provides. They contend first, that the terms of the decree preclude such application, and second, that an earlier ruling by the district court had become law of the case and dictated that the decree did not cover these services. We hold that the district court's determinations that the decree does cover these services, and that an earlier unrelated ruling does not compel a different result, are not in error.

Regarding the language of the decree, defendants point to numerous references to DPW, and the lack of references to DSS, in support of their argument that the decree on its face unambiguously precludes its application to the services now provided by DSS. We disagree. To be sure, the decree's reference to services "which the Department of Public Welfare administers and which it was directly providing on October 21, 1974" might conceivably be taken as limiting the decree to services only so long as they are provided by DPW. However, the reference may also be taken merely as a

1. DPW continues to be responsible for AFDC, MA, and SSI, the programs which were the initial basis for plaintiffs' suit. The present dispute is limited to whether administration of the social service programs mentioned in the consent decree, which have been transferred from DPW to DSS, must continue to conform to the consent decree. Plaintiffs are not attempting to bind DSS with respect to new services that were never provided by DPW.

way of identifying the covered services by their then relationship to DPW, without necessarily implying that the relationship itself continue into the indefinite future. Given this ambiguity, it was appropriate for the district court to inquire into the parties' intent and the circumstances surrounding the decree in order to select the most reasonable interpretation, *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 238, 95 S.Ct. 926, 935, 43 L.Ed.2d 148 (1975), and we ordinarily disturb its determination only if there is a "clearly erroneous factual finding ... [or an] error of law." *Mahoney v. Union Leader Retirement Profit Sharing Plan*, 635 F.2d 27, 28 (1st Cir. 1980); cf. *NLRB v. System Council T–6*, 599 F.2d 5, 8 (1st Cir. 1979). We can discern no such errors here.

The parties drafted the decree with a view to improving the quality of specific programs which the Commonwealth was administering. While such programs were then being performed by DPW, the focus of the decree was the need for more expeditious service, not the precise identity of the administering agency.[2] There is no indication that the parties wished to allow portions of the decree to be rendered a nullity simply because of some later inter-agency transfer of functions.[3] As pointed out above, the parties to the consent decree included not only the Commissioner of DPW, but also the Secretary of OHS, within whose department both DPW and DSS are lodged. An inter-agency transfer of functions hardly evidences an intention that

these programs be excluded from the decree.[4] Indeed, evidence of a bad faith transfer of functions by defendants in order to escape their responsibilities under the decree could in itself be a ground for applying the decree to DSS.[5] We thus see no error in the district court's construction of the decree to encompass the social services formerly provided by DPW but now the responsibility of DSS.

Nor do we think the contrary result required by the doctrine of law of the case. Defendants point to a ruling of the district court on November 8, 1978, that services provided by the Department of Elder Affairs ("DEA") were not covered by the decree, and contend that that ruling stands for the proposition that services not provided by DPW could never be covered by the decree. The factual and legal differences between that situation and the instant one, however, make the law of the case doctrine inapplicable. *See Terrell v. Household Goods Carriers' Bureau*, 494 F.2d 16, 19 (5th Cir.), *cert. dismissed*, 419 U.S. 987, 95 S.Ct. 246, 42 L.Ed.2d 260 (1974); *White v. Higgins*, 116 F.2d 312, 317 (1st Cir. 1940). The differences are many. For example, DSS, unlike DEA, is the legal successor to the duties of DPW; the DEA ruling, unlike the decision advocated by defendants with respect to DSS, did not render any part of the decree a nullity; and DSS, unlike DEA, is a department within the Executive Office of Human Services, which is and always has been a party defendant in this case. These differences make the doctrine inapplicable,

2. Indeed, the district court rejected proposed language that the decree would not apply to "services which may be offered pursuant to the Social Security Act by state agencies other than the Department of Public Welfare."

3. While defendants indicated at oral argument before this court that they would not have objected to the application of the decree to a different department if AFDC, MA, or SSI responsibilities had been transferred, the logic of their position on the language of the decree would suggest that the decree could not apply to the transfer of any function, whether of social services or the other programs involved.

4. Defendants also suggest that the social services are not covered by the decree at all, regardless of what agency is providing them.

They rely for this argument on certain general introductory language of the decree. When the decree sets forth the response times required for various services, however, it specifically designates certain social services, and these services are ones which are provided pursuant to Titles XX and IV–B. We therefore fail to see how the decree can reasonably be construed to exclude those services.

5. Under Fed.R.Civ.P. 65(d), nonparties may be bound by an injunction if they knowingly aid a defendant in avoiding his responsibilities under a decree. *See, e. g.*, 11 Wright & Miller, Federal Practice and Procedure: Civil § 2956 (1973).

and the district court was thus not bound [6] by its earlier ruling on the services provided by DEA when it decided on the services transferred to DSS.

### 2. *Binding DSS to the Decree*

We have determined thus far that the district court did not err in construing the consent decree to apply to social services formerly provided by DPW, but now the responsibility of DSS. Defendants argue that even if this is true, the court erred in joining the Commissioner of DSS and binding DSS to the relevant portions of the decree.

In support of this, defendants first urge that the DSS enabling legislation precludes application of the consent decree to DSS. They point to St.1978, c. 552, §§ 45A, 45B, as inserted by St.1979, c. 795, § 4, which together provide that all existing contracts and obligations of DPW, and proceedings brought before or against DPW, which "relat[e] solely to a comprehensive program of social services" shall be transferred to and become the responsibility of DSS. They argue that as the decree does not relate "solely" to social services—including, as it does, provisions for AFDC, MA, and SSI—it cannot be made applicable to DSS.

This construction of the statute seems to us to be manifestly incorrect. While it is difficult to fathom the legislature's intent in the absence of legislative history, it seems that the purpose of the statute is to make an appropriate division of duties between DPW and DSS, ensuring that each obligation be the responsibility of the correct department. Read in this light, the word "solely" obviously is intended to ensure that DSS not be made responsible for activities of DPW unrelated to the social services functions made the responsibility of DSS. To read the statute as defendants suggest would be to ascribe to the legislature an intent to avoid certain obligations— such as the ones here—entirely. No evidence of any such intent has been present-

ed. Finally, we note that the construction urged by defendants would lead to the anomalous result that if this decree had originally been written as two separate decrees, one with only the social services provisions, and the other with the rest, then DSS would be bound under this statute, while the mere consolidation of the separable social services provisions with others renders them a nullity. We thus conclude that this statute does not preclude application of the relevant portions of the decree to DSS.

Defendants next contend that the district court's ruling cannot be justified by Fed.R. Civ.P. 25(d)(1), which reads as follows:

> (1) When a public officer is a party to an action in his official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and his successor is automatically substituted as a party. Proceedings following the substitution shall be in the name of the substituted party, but any misnomer not affecting the substantial rights of the parties shall be disregarded. An order of substitution may be entered at any time, but the omission to enter such an order shall not affect the substitution.

Defendants argue that as DSS is an entirely new department with a different structure than DPW, and as DPW continues to exist, the Commissioner of DSS cannot be a successor in office to the Commissioner of DPW for purposes of this rule. This may be true, although, without deciding, we note that the district court's finding that DSS "is an entity taking over the functions of a previous entity that was bound by the decree" may be sufficient to justify binding DSS under Rule 25(d)(1). *See generally Wright v. Council of City of Emporia*, 407 U.S. 451, 92 S.Ct. 2196, 33 L.Ed.2d 51 (1972). The district court's construction of the decree to encompass the services at issue is a sufficient ground to bind DSS to the decree, unless some rule of law precludes such ap-

---

**6.** We note also that the doctrine of law of the case is discretionary, not mandatory, *e. g., White v. Higgins*, 116 F.2d 312, and that even if it were applicable, the district court would thus not have been compelled to follow its prior decision.

plication. Even if Rule 25(d)(1) may not require a ruling binding DSS, it certainly does not preclude one.

Defendants do, however, point to a rule which they claim does bar binding DSS to the decree: Fed.R.Civ.P. 65(d), which provides,

> (d) Form and Scope of Injunction or Restraining Order. Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

Defendants argue that as DSS was not a party to the original proceeding, Rule 65(d) precludes the court's ruling that it is bound by the decree. We disagree. The Secretary of the Executive Office of Human Services was and is a party, and signed the decree. DSS is a department within OHS, Mass.G.L. c. 6A, § 16, and, at least for these purposes, its commissioner fits sufficiently within the concept of an officer, agent, or employee of OHS. DSS was therefore properly bound to the decree under Rule 65(d).

We note the reasonableness of this conclusion. The Commonwealth, through the Secretary of OHS, and other officials, bound itself to comply with the provisions of the decree. Certain functions have been transferred from one department within OHS to another. The district court found that the functions in question—the delivery of social services—were covered by the decree. This was in keeping with the intent of the parties in entering the decree, as the court saw it; it certainly violated no due process right of the Commonwealth, which was at all times represented in the case by the Attorney General. The district court's ruling binding DSS was thus entirely proper.

This discussion lends support to our rejection of defendants' final argument on the issue, that the district court abused it discretion in joining the Commissioner of DSS pursuant to Fed.R.Civ.P. 21, which provides in pertinent part, "Parties may be dropped or added by order of the court . . . at any stage of the action and on such terms as are just." Joinder here was certainly appropriate in light of the ruling that the decree applied to the services provided by DSS, and the place of DSS within the Commonwealth's executive hierarchy. Moreover, the terms of the district court's order, described below, make it clear that there is no injustice in the ruling. The district court is well-placed to determine what ruling will best promote justice, *see Cabrera v. Municipality of Bayamon,* 622 F.2d 4, 6 (1st Cir. 1980), and we see no cause for holding that it abused its discretion under Rule 21.

### 3. *Refusal to Vacate Decree Temporarily*

Defendants' final contention is that the district court erred in failing to vacate the decree with respect to DSS for one year, in order to allow DSS to develop its own regulations and policies and comply with the decree on its own, without being formally bound. If after that year, the court finds DSS not in compliance, defendants assert that then a new decree could be fashioned with respect to DSS. The district court found that this offer by DSS to relitigate the compliance issue and draft a new decree would be a "strict waste of legal machinery," and we agree. To the extent DSS was simply seeking a one-year moratorium, rather than a chance to relitigate the entire case with respect to social services, it essentially got what it asked for, because the court agreed to give DSS one year in which to submit monitoring reports, to allow them "some grace period so they can attempt to work things out," to let them "start with a clean slate," and to allow them "an opportunity to fully understand their responsibilities under the terms of the

Decree and give them a reasonable time" to comply. The court thus made it abundantly clear that it would be flexible with DSS, thus avoiding any undue hardship to it. Nor is there any injustice in the court's ruling, *see supra*. Finally, the fact that DSS might comply with the existing decree without being formally bound is not a sufficient reason to vacate the decree. *See Coalition of Black Leadership v. Cianci*, 570 F.2d 12, 14 (1st Cir. 1978).[7]

*Affirmed.*

---

**7.** Defendants have indicated to us that recent changes in federal law may have abolished the legal basis for the consent decree's requirement that social services be delivered within the time limits specified in the decree. This argument is properly addressed to the district court, which clearly has the power to modify the decree if changes in law so dictate. *See System Federation No. 91 v. Wright*, 364 U.S. 642, 651, 81 S.Ct. 368, 373, 5 L.Ed.2d 349 (1961); *Gomes v. Moran*, 605 F.2d 27, 31 (1st Cir. 1979).